IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TAMIKO L. STANLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:15-cv-00555 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | Magistrate Judge Robert C. Mitchell |
| CITY OF PITTSBURGH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

On February 12, 2016, the Court issued an Order that did (at least) two things Plaintiff apparently didn't agree with. First, the Court cited *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) in a footnote. Second, the Court dismissed Plaintiff's claims against Wendy Kobee with prejudice. Now, Plaintiff asks the Court to reconsider its doing those two things. The Court has considered the briefs submitted by both parties, their oral argument, and the contents of its prior order.

Where there is no change in law or fact between the original decision and the reconsideration, a Court must examine whether the prior opinion contains a "clear error of law or fact" or causes "manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Essentially this Court must reexamine whether or not it was correct (or, more accurately, demonstrably wrong) when it rendered its initial decisions.

First, the citation to *Oliva*. The Court's citation to *Oliva* in the February 12th Order did not really *do* anything in terms of the matter pending before the Court—a motion to dismiss Plaintff's § 1981 retaliation claims. The Court noted (and treated as Circuit precedent) *Oliva*'s statement that "[i]n a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation," *Oliva*, 604 F.3d at 798, but recognized that Plaintiff had

1

sufficiently pled such impermissible racial discrimination. Thus, the Court concluded that it did not need to address Plaintiff's argument about whether the statement from *Oliva* was or was not actually binding Circuit precedent. Still, Plaintiff wants the Court to reconsider its footnote and conclude that, even though Plaintiff *did* sufficiently plead underlying racial discrimination that meets the *Oliva* test, Plaintiff did not actually *have to* do so.

Why? Plaintiff claims that she will have to take additional, burdensome discovery in order to create a genuine issue of material fact about the existence of underlying racial discrimination at the summary judgment stage.[1] It is difficult for the Court to see how needing to prove underlying racial discrimination would open the floodgates of unnecessary discovery, or why this would burden the Plaintiff who (presumably) will be requesting much of this discovery at the expense of the Defendant. Further, as the Court noted at oral argument, Plaintiff has already pled "smoking gun"-level direct racially hostile statements attributable to Defendants. *See* ECF No. 24 at ¶ 27. *See also* ECF No. 24 at ¶18–19. Indeed, whether or not *Oliva* states the controlling rule of law for § 1981 retaliation cases, it would seem that a Plaintiff alleging race-based employment retaliation would want to ferret out any evidence of race discrimination that they could reasonably find, anyway.

But at any rate, Plaintiff's argument about the potential for additional discovery is not enough to convince this Court to redline out the *Oliva* footnote in its prior Order. First and foremost there are lingering Article III problems with this Court issuing what would essentially be an advisory opinion announcing that a statement in a precedential Third Circuit Opinion is

---

[1] Of course, Plaintiff (or Plaintiff's counsel) might also be interested in establishing a line of case law rejecting *Oliva*'s underlying violation rule—which may be somewhat ironic when you think about it. Plaintiff claims that the statement in *Oliva* is dicta, and therefore not binding on this Court. So, Plaintiff wants this Court to declare—in dicta, since it wouldn't actually change any *holding* in this case—that the statement in *Oliva* is not binding precedent. Presumably, future plaintiffs could/would point to such dicta in this case declaring *Oliva*'s statement to be dicta as authority for future courts to not follow what they would claim to be the dicta of *Oliva*. As nifty a turn of events as that might be, this Court's reconsidering its decision on those grounds is outside the reach of this Court's authority.

2

dicta. Furthermore, there are reasonable arguments on both sides of the issue, with other District Courts splitting on the vitality of *Oliva*'s underlying discrimination rule. *Compare Claybourne v. HM Ins. Grp.*, No. 2: 14CV1412, 2015 WL 7444644, at *1 (W.D. Pa. Nov. 23, 2015) (concluding that "*Oliva* did not impose a requirement of the evidentiary establishment of an actual, individual-specific underlying § 1981 violation on a plaintiff seeking redress for retaliation"); *Hawkins v. The Ctr. for Spinal Surgery*, No. 3:12-CV-01125, 2015 WL 4168388, at *2 (M.D. Tenn. July 9, 2015) ("[A]lthough opinions from sister courts may constitute persuasive authority, the Court does not find the *Oliva* opinion and its progeny persuasive in this instance" because "[t]he Supreme Court case on which *Oliva* relies does not support the *Oliva* court's determination that there must be an underlying § 1981 violation in order to establish a § 1981 retaliation claim.") (citations omitted), *with Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 757 (E.D. Pa. 2014), *appeal dismissed* (Nov. 25, 2014) ("[F]or a court to . . . ignore *Oliva's* underlying-violation requirement would usurp Third Circuit authority and be in derogation of this Court's obligations. . . . *Oliva* is the controlling authority in this circuit. The Court is charged to apply that law."); *Bethea v. Merchants Commercial Bank*, No. CV 11-51, 2014 WL 4413045, at *12 (D.V.I. Sept. 8, 2014) (granting summary judgment because plaintiff "has not demonstrated that there was an underlying § 1981 violation" under *Oliva*); *Sutton v. Bd. of Educ. of the City of Plainfield*, No. CV 13-5321 (MCA), 2015 WL 9308251, at *10 (D.N.J. Dec. 22, 2015) (quoting *Oliva*'s underlying violation requirement and concluding that Plaintiff's § 1981 retaliation claims fails because Plaintiff "does not have a viable claim under § 1981" generally); *Rueda v. Nexeo Sols.*, LLC, No. CIV.A. 14-3801 MAS, 2015 WL 1472057, at *2 (D.N.J. Mar. 31, 2015) (citing the *Oliva* rule and concluding that "to the extent Plaintiff attempts to bring a retaliation claim, she fails to allege facts to support the requirement of an underlying § 1981

3

violation"); *Ke v. Drexel Univ.*, No. CV 11-6708, 2015 WL 5316492, at *39 (E.D. Pa. Sept. 4, 2015), *aff'd sub nom. Lei Ke v. Drexel Univ.*, No. 15-3377, 2016 WL 1105404 (3d Cir. Mar. 22, 2016) ("Previously, the Court found that Plaintiff failed to raise a genuine issue of material fact that Defendants violated Section 1981 when it dismissed Plaintiff. Thus, pursuant to *Oliva*, because Plaintiff has not demonstrated an underlying § 1981 violation, his retaliation claim fails."). Apart from the fact that this Court's view of *Oliva* matches both the express verbiage used by the *Oliva* Court and the view of most of the other courts considering this issue, it would be improper for the Court to render an opinion on the validity of *Oliva*'s holding when such an opinion would not alter any of the conclusions or commands in its own February 12th Order. At the very least, the Court's footnote recognition of the *Oliva* rule in the February 12th Order was not a "clear error of law" and does not cause "manifest injustice." *Max's Seafood Cafe*, 176 F.3d at 677. This Court piling its own dicta upon what Plaintiff says is *Oliva* dicta would be outside of Article III and would not be sound judicial practice.

Plaintiff's second request for reconsideration concerns the dismissal of claims against then-Defendant Wendy Kobee. Plaintiff contends that the Court's conclusion was improper because the non-conclusory allegations in the Amended Complaint *do* properly state a § 1981 retaliation claim against Kobee. To state a retaliation claim under § 1981 a Plaintiff may use the *prima facie* case process under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden shifting framework. *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 268 (3d Cir. 2010) ("The burden of a § 1981 plaintiff is to prove purposeful discrimination and the *McDonnell Douglas* framework assists in this endeavor by structuring the evidence on the issue of whether the defendant intentionally discriminated against the plaintiff."). However, as against an individual defendant, Plaintiff must also plead that the particular defendant was

4

personally involved in the discriminatory act. *See Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) *aff'd,* 481 U.S. 604 (1987) ("If individuals are personally involved in the discrimination against the Appellant, and if they intentionally caused the College to infringe on Appellant's Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.").[2] *See also Murthy v. Indiana Univ. of Pennsylvania*, 2013 WL 1363924, at *3 (W.D. Pa. Apr. 3, 2013) ("Individual defendants may be held liable under 42.U.S.C. § 1981 if they are personally involved in intentional acts of discrimination."); *Clinkscales v. Children's Hosp. of Philadelphia*, 2009 WL 1259104, at *5 (E.D. Pa. May 7, 2009) ("[I]ndividuals may be held liable under 42 U.S.C. § 1981 if they are involved personally in acts of discrimination."); *Johnson v. Res. for Human Dev., Inc.*, 843 F. Supp. 974, 978 (E.D. Pa. 1994) ("[A] claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the discriminatory action."). In her Amended Complaint, Plaintiff failed to plead any involvement or affirmative link connecting Kobee with Plaintiff's termination or with the subsequent criminal complaint (the alleged retaliatory actions).

With respect to Kobee's involvement in Plaintiff's termination, the Amended Complaint alleges the following: Kobee is an Assistant City Solicitor who reports to Defendants Sanchez Ridge (Kobee's direct supervisor), Kevin Acklin, and Debbie Lestitian, ¶7; Kobee was present with Defendant Siegel—Director of the Department of Personnel and Civil Service Commission—when Siegel advised Plaintiff that she (Plaintiff) was to be transferred to the

---

[2] District courts routinely quote this participation standard from *Al-Khazraji* with respect to § 1981 claims brought against individual Defendants. *See, e.g., Houston v. Dialysis Clinic, Inc.*, 2015 WL 3935104, at *9 (D.N.J. June 26, 2015); *Gist v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 4105015, at *7 (D.N.J. Aug. 19, 2014); *Joseph v. New Jersey Transit Rail Operations, Inc.*, 2013 WL 5676690, at *14 (D.N.J. Oct. 17, 2013) *aff'd,* 586 F. App'x 890 (3d Cir. 2014); *Frazier v. Bed Bath & Beyond Inc.*, 2013 WL 1845499, at *6 (D.N.J. Apr. 30, 2013).

5

Pittsburgh Partnership Department position,[3] ¶30; Kobee received a copy of the letter sent to Plaintiff confirming the decision to transfer Plaintiff, ¶ 31; Kobee, Siegel, and Lestitian made the final decisions with respect Plaintiff's FMLA leave and short term-disability leave, ¶ 36; Kobee communicated several times with Plaintiff's then-attorney with respect to these leave requests, ¶ 38; Kobee indicated that the City was "investigating" Plaintiff's discrimination claims, but did not provide details of the City's investigation or agree to Plaintiff's attorney's requests to bring the claims to a resolution, ¶40; "[s]*ix days later, in direct response to Plaintiff's prior protected activities, Defendants Siegel, Kobee and Sanchez Ridge terminated Plaintiff's employment*", ¶43[4]; Kobee received a copy of the letter Siegel sent to Plaintiff informing Plaintiff that she had been terminated, ¶ 45; at the direction Sanchez Ridge, Kobee sent a letter to Plaintiff's attorney responding to a prior settlement correspondence from that attorney and informing Plaintiff's attorney that Plaintiff had been terminated from employment, enclosing a copy of Siegel's letter, ¶46.

In other words, but for paragraph 43, the only allegations in the Amended Complaint related to Kobee's involvement in Plaintiff's termination are that Kobee was an attorney for the City who, in communication with Plaintiff's attorney about Plaintiff, responded to Plaintiff's employment related requests and complaints, and eventually provided Plaintiff's attorney with a copy of Siegel's termination letter to Plaintiff.

So what should the Court make of Plaintiff's allegation at ¶43? In essence, ¶43 recites the legal requirements for a retaliation action—(1) that Plaintiff engaged in "prior protected

---

[3] Of note, this is not one of the actions that Plaintiff alleges to be discriminatory retaliation.

[4] In a moment, paragraph 43 will be examined further.

6

activities," (2) that Defendants "terminated Plaintiff's employment,"[5] and (3) that the termination was "in direct response to Plaintiff's prior protected activities." ECF No. 24 at 7. *See Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (noting that the elements of a § 1981 retaliation action are "(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"). Such allegations that provide a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) ("[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."). A court "need not credit" such "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). *See also Frederick v. Se. Pa. Transp. Auth.*, 892 F.Supp. 122, 125 (E.D.Pa.1995) (explaining that a plaintiff bringing a § 1981 claim may not rely on vague, conclusory allegations because "[a] specific factual basis must be pled to create the inference of discrimination"). Indeed, District Courts are instructed to strike such "conclusory allegations" and then, "looking at the well-pleaded components of the complaint," determine whether the elements of the claim are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). Paragraph 43 makes no "showing" (as required by *Iqbal/Twombley*) as to what Kobee actually did personally. There is only a general cumulative assertion about three individuals. Assessing paragraph 43 as directed, the Amended Complaint fails to allege and "show" sufficient plausible factual allegations that personally tie Kobee to the allegedly discriminatory termination decision. There is simply no basis to conclude that Kobee was doing anything other than being

---

[5] Notably, the Amended Complaint does not allege that Plaintiff reported to Kobee or that Kobee supervised Plaintiff.

7

present at certain events, and then doing her job as a lawyer for a client in communicating with the Plaintiff's lawyer about Plaintiff. She may have worked in close proximity with other Defendants in this case, but bumping shoulders with other Defendants or writing client letters does not subject Kobee to § 1981 liability.

However, there is one further allegation in the Amended Complaint that *does* warrant the Court's reconsideration of its prior Order. Paragraph 74 of the Amended Complaint claims: "Following Plaintiff's protected activities, with malice and/or reckless indifference to Plaintiff's federally protected rights, Kobee personally terminated Plaintiff's employment and personally approved Siegel's filing of the baseless criminal complaint against Plaintiff." ECF No. 24 at 11. The first part of this paragraph (concerning Kobee's personal termination of Plaintiff's employment) is demonstrably inconsistent with the letter attached to the Amended Complaint at ECF No. 24-2 and will be disregarded. However, the second part of this paragraph (concerning Kobee's approval of Siegel's filing of the criminal complaint), combined with the other allegations concerning this criminal complaint elsewhere in the Amended Complaint, *does* provide sufficient factual grounding (if only barely) to state a plausible claim that Kobee retaliated against Plaintiff by approving of the criminal complaint filed against Plaintiff.[6] *See Burns v. Reed*, 500 U.S. 478, 496 (1991) (holding that a government lawyer providing legal advice is not protected by absolute immunity).

As such it is hereby ORDERED that Plaintiff's Motion for Reconsideration is GRANTED IN PART AND DENIED IN PART as follows. The Motion is DENIED with respect to any alteration of the *Oliva* footnote. The Motion is also DENIED with respect to any

---

[6] Notably, Plaintiff did not mention or discuss this allegation in his Motion for Reconsideration. That might say something about Plaintiff's ability to actually *prove* the factual validity of this allegation through discovery, but for the time being the Court accepts all factual allegations in the Amended Complaint as true.

8

claims that Kobee retaliated against Plaintiff by participating in the decision to terminate Plaintiff's employment. However, the Motion is GRANTED in the very limited respect to the allegation that Kobee approved in the filing of the criminal complaint against Plaintiff in retaliation for her prior protected conduct. As such, Defendant Kobee will remain in the case, but the claim against her is limited to the allegation that she approved of Siegel's filing of the criminal complaint against Plaintiff in retaliation for Plaintiff's prior protected activity.[7]

Furthermore, Plaintiff's Motion to Lift Stay at ECF No. 58 is hereby GRANTED. The Stay shall be lifted and this litigation will continue as follows. Consistent with the Court's Order at ECF No. 35, Plaintiff may file a Second Amended Complaint asserting his claims through 42 U.S.C. § 1983 (rather than § 1981), pursuant to *McGovern v. City of Philadelphia,* 554 F.3d 114 (3d Cir. 2009).[8] This Second Amended Complaint shall be filed on or before August 5, 2016. Defendants shall respond to this Complaint no later than 21 days thereafter, and then this case will be off to the races before the Magistrate Judge.

Mark R. Hornak
United States District Judge

Dated: July 15, 2016

cc: All counsel of record

---

[7] The Plaintiff has already once amended. The Court does not believe that Plaintiff should be provided leave to amend the claims concerning Kobee's personal participation in the termination of Plaintiff. *See Fleming v. U.S. Veterans Admin.,* 468 F. App'x 95, 96 (3d Cir. 2012) ("The motions for reconsideration, all of which were properly denied, amply demonstrate that amendment of the complaint would have been futile and that granting leave to amend was therefore unnecessary."). As stated in the Court's Prior Order at ECF No. 35, however, Plaintiff is granted leave to amend consistent with that Order and the reconsiderations of that Order as stated herein.

[8] One further aspect of the Court's February 12th Order merits reconsideration, but it is somewhat of a technical point. In that Order, the Court stated that the claims against the City of Pittsburgh were only alleged via 42 U.S.C. § 1981. However, ¶ 58 states that the "Defendant City is sued under 42 U.S.C. § 1983." Thus, this aspect of the Court's February 12th Order is also amended.

9